IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Paul M. KASPROWICZ, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Paul M. KASPROWICZ, Respondent.

Supreme Court

*No. 03–2844–D. Decided December 21, 2004.*

2004 WI 151

(Also reported in 690 N.W.2d 13.)

¶ 1. PER CURIAM.   We review the referee's report and recommendation that Attorney Paul M. Kasprow-

icz be publicly reprimanded for having committed 16 counts of professional misconduct involving six separate client matters as alleged in the complaint filed by the Office of Lawyer Regulation (OLR) in this court on October 23, 2003.[1] Noting that Kasprowicz had admitted to most of the misconduct counts in his answer or at the public hearing, the referee concluded that his misconduct had been proven by clear and convincing evidence. The primary dispute before the referee concerned the appropriate sanction to be recommended for Kasprowicz' multiple counts of misconduct: The OLR sought a 60–day suspension of Kasprowicz' license to practice law, while Kasprowicz urged the referee to recommend a public reprimand. The referee appointed in this matter, Attorney Kim M. Peterson, agreed with Kasprowicz and has recommended to this court that Kasprowicz receive a public reprimand for his professional misconduct.

¶ 2. Neither the OLR nor Kasprowicz have appealed from the referee's report and recommendation; thus, this court's review proceeds pursuant to SCR 22.17(2).[2] We conclude the referee's findings of fact are supported by clear and convincing evidence in the

---

[1] The OLR complaint alleged 16 separate counts of misconduct pertaining to six separate matters but one of the client matters did not allege any misconduct related to that client; rather, the charge focused on Kasprowicz' failure to provide a timely response to OLR's request for information.

[2] SCR 22.17(2) provides:

> (2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

record and accordingly, we adopt those findings as well as the referee's conclusions of law that Kasprowicz committed all 16 counts of misconduct as alleged in the OLR complaint. We also accept the referee's recommendation and publicly reprimand Attorney Kasprowicz for his misconduct.

¶ 3. We also direct that Attorney Kasprowicz pay the OLR the costs accrued in this disciplinary proceeding, now totaling $5760.16.

¶ 4. Respondent, Attorney Paul Kasprowicz, was admitted to practice law in this state in 1986 and has practiced as a sole practitioner in Waukesha county. He has never before been the subject of a disciplinary proceeding. Because there has been no appeal and there is no dispute over the facts, the allegations of the OLR complaint and the referee's findings will be only briefly discussed.

COUNTS 1 THROUGH 6—CLIENT K.M.

■

¶ 5. K.M. retained Kasprowicz on December 14, 1998, to help in the probate of her mother's estate. Kasprowicz and K.M. agreed that his fee would be based on a percentage of the estate.

¶ 6. On January 8, 1999, Kasprowicz filed an application for informal probate and K.M. was appointed personal representative. Subsequently, on July 13, 1999, the register in probate filed a "Notice of Overdue Inventory" because the inventory of the estate had not been filed within six months of the appointment of the personal representative as required by Wis. Stat. § 858.01.[3]

---

[3] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 7. On August 4, 1999, Kasprowicz filed the inventory listing property valued at $417,835.22 as subject to administration. The inventory, however, improperly included an IRA and life insurance policy that were held by the decedent's living trust, a document Kasprowicz had drafted for the decedent in 1992. The beneficiary form on the decedent's IRA designated her trust, not her estate, as beneficiary.

¶ 8. The inventory also incorrectly listed the decedent as having a one-half ownership in real estate in Monroe county, when in fact, she had only a one-quarter ownership in that property.

¶ 9. The value of the property Kasprowicz had erroneously included in the decedent's estate exceeded $275,000.

¶ 10. After the inventory, Kasprowicz filed no additional documents in the estate and failed to close the estate within 18 months. When orders to show cause were subsequently issued in October 2000 regarding his failure to close the estate, Kasprowicz appeared and asked that the file be transferred to another attorney, Attorney George Love. Kasprowicz stated at the order to show cause hearing that he would pay all of Attorney Love's fees incurred in closing the estate.

¶ 11. That order to show cause hearing had been requested by K.M. because Kasprowicz had been unresponsive to her questions about settling the estate. Kasprowicz had moved his office without informing K.M. of the new location and her numerous attempts to discuss the status of her mother's estate with Kasprowicz had been unsuccessful. Ultimately, Kasprowicz left a voicemail message for K.M. stating that he was taking a leave of absence from his law practice.

¶ 12. After taking over the estate as successor counsel, Attorney Love asked Kasprowicz several times to turn over his file on the estate; Kasprowicz finally did so over four months later.

¶ 13. During the time he handled the estate, Kasprowicz failed to file a fiduciary income tax return for the estate and the trust. That failure resulted in the assessment of $4100 in interest and penalties.

¶ 14. After K.M. filed a grievance with the OLR about Kasprowicz' conduct, the OLR began its investigation; Kasprowicz, however, failed to timely respond to the OLR's investigative efforts.

¶ 15. Ultimately, however, Kasprowicz paid over $11,000 which included all of Attorney Love's fees, a return to the client of one-half of Kasprowicz' fees, and all of the penalties and interest imposed by the IRS as the result of the late filing of the estate's tax returns.

¶ 16. This course of conduct, as alleged in the OLR complaint and which the referee found had been proven by clear and convincing evidence, led to the following six counts of misconduct against Kasprowicz:

- Count 1. By improperly including an IRA and life insurance policy in the estate's inventory, Kasprowicz failed to represent a client with the legal knowledge, skills, thoroughness, and preparation reasonably necessary for the representation, in violation of SCR 20:1.1.[4]

- Count 2. By failing to file the estate's inventory within six months as required by Wis. Stat.

---

[4] SCR 20:1.1 provides: "Competence. A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

§ 858.01, by failing to close the estate within 18 months, as required by Wis. Stat. § 863.35, without filing a request for an extension of time to close the estate, and by failing to file fiduciary income tax returns for the estate and trust, which resulted in approximately $4100 in interest and penalties, Kasprowicz failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[5]

- Count 3. By failing to respond to K.M.'s attempts to contact him regarding the status of the estate, Kasprowicz failed to promptly comply with a client's numerous requests for information, in violation of SCR 20:1.4(a).[6]

- Count 4. By failing to turn K.M.'s file over to her new counsel for approximately four and one-half months after a request was made for the file, Kasprowicz failed to take steps to the extent reasonably practicable to protect a client's interest, in violation of SCR 20:1.16(d).[7]

- Count 5. By charging K.M. a percentage of the estate's value for his representation in the mat-

---

[5] SCR 20:1.3 provides: "Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client."

[6] SCR 20:1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[7] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

ter, Kasprowicz violated a statute [Wis. Stat. § 851.40(2)(e)] and supreme court decision [*In re Disciplinary Proceedings Against Sylvan*, 202 Wis. 2d 123, 549 N.W.2d 249 (1996)] regulating the conduct of lawyers, in violation of SCR 20:8.4(f).[8]

- Count 6. By failing to timely respond to OLR staff's investigative letters and by failing to provide relevant information during the course of an investigation, Kasprowicz failed to timely disclose all facts and circumstances pertaining to the grievance and failed to timely answer questions or furnish documents, in violation of SCR 22.03(2),[9] constituting misconduct, pursuant to SCR 20:8.4(f).

## COUNT SEVEN—CLIENT R.K.

■

¶ 17. In October 1999 R.K. retained Kasprowicz to handle the probate of R.K.'s mother's estate. In October 2001 R.K. filed a grievance with the OLR

---

[8] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to: (f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[9] SCR 22.03(2) provides:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

asserting that despite multiple orders to show cause issued by the probate court, the estate had not been closed.

¶ 18. The OLR staff mailed a copy of that grievance to Kasprowicz and informed him that pursuant to SCR 22.03(2), he was required to provide a written response disclosing all facts and circumstances pertaining to the alleged misconduct on or before November 15, 2001. Kasprowicz failed to respond to that letter.

¶ 19. Kasprowicz also failed to respond to a second investigative letter sent by the OLR staff by certified mail on November 28, 2001. Likewise, although Kasprowicz had signed a return receipt for a third letter from the OLR on December 14, 2001, he did not respond to that letter either.

¶ 20. Subsequently, on January 28, 2002, the OLR filed a motion in this court pursuant to SCR 22.03(4)[10]

---

[10] SCR 22.03(4) provides:

(4) If the respondent fails to respond to the request for written response to an allegation of misconduct or fails to cooperate in other respects in an investigation, the director, or a special investigator acting under SCR 22.25, may file a motion with the supreme court requesting that the court order the respondent to show cause why his or her license to practice law should not be suspended for willful failure to respond or cooperate with the investigation. All papers, files, transcripts, communications, and proceedings on the motion shall be confidential and shall remain confidential until the supreme court has issued an order to show cause. The license of an attorney suspended for willful failure to respond or cooperate with an investigation may be reinstated by the supreme court upon a showing of cooperation with the investigation and compliance with the terms of suspension. The director or the special investigator shall file a response in support of or in opposition to the reinstatement within 20 days after the filing of an attorney's request for reinstatement. Upon a showing of good cause, the supreme court may extend the time for filing a response.

requesting that Kasprowicz be ordered to show cause why his license should not be suspended for his willful failure to cooperate with the OLR in its investigation of this grievance. After Kasprowicz had been served with a copy of that motion, he finally on January 30, 2002, submitted an initial response to the R.K. grievance; as a result, the OLR withdrew its request for a suspension of Kasprowicz' license for his failure to cooperate.

¶ 21.   On June 18, 2002, OLR staff sent a letter to Kasprowicz requesting a supplemental response to some additional investigative questions. He was asked to submit his response by July 1, 2002. Again, Kasprowicz failed to respond, and he likewise failed to respond to a second letter sent to him by OLR staff by certified mail. On July 15, 2002, a third OLR investigative letter, which requested a response by July 23, 2002, was personally served on Kasprowicz. On that date, Kasprowicz finally hand-delivered a response to the OLR and met with OLR staff. At that meeting, OLR staff requested additional information by August 19, 2002, and Kasprowicz was sent a letter from the OLR on July 24, 2002, confirming that request. Kasprowicz, however, again failed to respond and supply the additional information by the specified date.

¶ 22.   Another letter from the OLR personally served on Kasprowicz on August 21, 2002, requested a response from him by August 30, 2002; Kasprowicz faxed his response to OLR staff on August 31, 2002.

¶ 23.   On September 5, 2002, OLR staff sent Kasprowicz another letter requesting additional information by October 4, 2002; again, Kasprowicz did not respond or supply the requested information.

¶ 24. This course of conduct, as alleged in the OLR complaint and which the referee found had been proven by clear and convincing evidence, led to the following count of misconduct against Kasprowicz:

- Count 7. By failing to respond to OLR staff's letters of October 23, 2001, November 28, 2001, and December 14, 2001, until after the OLR filed an order to show cause on January 28, 2002, requesting the temporary suspension of Kasprowicz' license to practice law, and by failing to respond staff's letters of June 18, 2002, and July 2, 2002, until after being personally served with a third request, and by failing to respond to staff's letters of July 24, 2002, until after being personally served with a second request, Kasprowicz failed to timely provide relevant information during the course of the investigation, in violation of SCR 22.03(2) and SCR 22.03(6),[11] constituting misconduct, pursuant to SCR 20:8.4(f).

## COUNTS 8 THROUGH 10—CLIENT S.M.

¶ 25. Kasprowicz prepared tax returns for S.M. for the years 1994 through 1997, and again for the year 1999. In February 2001 the Wisconsin Department of Revenue (DOR) placed a lien on S.M.'s personal residence for back taxes. S.M. contacted Kasprowicz re-

---

[11] SCR 22.03(6) provides: "(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

garding the tax lien and signed a power of attorney allowing Kasprowicz to deal directly with the DOR regarding S.M.'s taxes.

¶ 26.   During the next eight months, S.M. tried to contact Kasprowicz several times to discuss the status of the matter. Kasprowicz failed to respond except to send S.M. a copy of the letter Kasprowicz had mailed to the DOR on June 20, 2001. During the eight months that Kasprowicz represented S.M. regarding the DOR tax lien, Kasprowicz was unable to resolve the matter.

¶ 27.   S.M. subsequently filed a grievance with the OLR on October 18, 2001, noting that the tax lien was still attached to his home and Kasprowicz had not responded to his attempts to contact him. Also, in October 2001, S.M. hired an accountant to deal with the tax lien. The accountant cleared up that matter within a month; the accountant later stated that " . . . it was no problem to make a few calls and sort out the matter with the DOR auditor."

¶ 28.   On December 14, 2001, OLR staff wrote to Kasprowicz requesting a response to S.M.'s grievance by January 8, 2002; Kasprowicz failed to respond.

¶ 29.   On January 11, 2002, OLR staff sent additional correspondence to Kasprowicz requesting a response to S.M.'s grievance by January 22, 2002. By letter dated January 23, 2002, Kasprowicz requested an extension of time to respond to S.M.'s grievance and informed the OLR that he had retained an attorney to represent him in the OLR investigation. The request for an extension was granted.

¶ 30.   On March 29, April 8, and April 30, 2002, the OLR received copies of letters the attorney sent to Kasprowicz stating that the attorney needed to talk with Kasprowicz as soon as possible regarding S.M.'s grievance and telling Kasprowicz to contact the attor-

ney to schedule a conference to discuss the matter. The final letter from the attorney informed Kasprowicz that he was withdrawing from representing Kasprowicz in the grievance matter.

¶ 31. By letter dated May 7, 2002, OLR staff requested Kasprowicz to respond to S.M.'s grievance no later than May 15, 2002. After being personally served with that letter, Kasprowicz contacted OLR staff and promised to provide a response; again he failed to do so.

¶ 32. On July 23, 2002, Kasprowicz appeared at the OLR office in Milwaukee and stated that he would respond to S.M.'s grievance by August 2, 2002, a date OLR staff later confirmed by letter. Kasprowicz, however, failed to respond as promised. He finally responded on August 30, 2002, after he had been personally served with another follow up letter from OLR staff.

¶ 33. This course of conduct, as asserted in the OLR complaint and which the referee found had been proven by clear and convincing evidence, led to the following three counts of misconduct against Kasprowicz:

- Count 8. By failing to diligently and promptly pursue removal of the tax lien on his client's home, and by sending only one letter to the Wisconsin Department of Revenue in the matter during an eight-month time span, Kasprowicz failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

- Count 9. By failing to return telephone calls and respond to other attempts of his client to contact him about the matter, Kasprowicz failed to keep a client reasonably informed about the status of

109

a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4.[12]

- Count 10. By failing to respond to multiple OLR staff investigative letters relating to the S.M. grievance, Kasprowicz failed to timely fully and fairly disclose all facts and circumstances pertaining to alleged misconduct, in violation of SCR 22.03(2), constituting misconduct, pursuant to SCR 20:8.4(f).

## COUNTS 11 AND 12—CLIENT N.G.

■

¶ 34. Kasprowicz represented N.G. in her divorce action and obtained a judgment of divorce on her behalf on February 20, 2002. As the attorney for the moving party, Kasprowicz was to draft and submit proposed findings of fact, conclusions of law, and the judgment within 30 days of the final divorce hearing pursuant to Wis. Stat. § 767.37(1).

¶ 35. Because this proposed draft had not been filed by Kasprowicz, an order to show cause hearing was held on May 24, 2002. Kasprowicz informed the court that he had drafted the paperwork and forwarded it to opposing counsel; opposing counsel finally received the proposed drafts on May 28, 2002. On that same day, the court approved the drafts as to form and returned them to Kasprowicz; Kasprowicz, however, did not file the documents with the court until July 2002.

---

[12] SCR 20:1.4 provides: "Communication. (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

¶ 36. On June 26, 2002, N.G. filed a grievance about Kasprowicz' conduct with the OLR. The OLR sent Kasprowicz a letter on August 22, 2002, requesting a response to N.G.'s allegations. Kasprowicz submitted a two-paragraph response and a copy of his final bill to N.G.

¶ 37. On September 19, 2002, the OLR requested additional specific information from Kasprowicz relating to N.G.'s grievance, but Kasprowicz failed to respond.

¶ 38. On October 11, 2002, the OLR sent another request to Kasprowicz by certified mail which Kasprowicz signed for; however, he again did not respond.

¶ 39. On December 9, 2002, Kasprowicz was personally served with a request for information regarding the N.G. grievance and finally submitted his written response to the OLR on December 16, 2002.

¶ 40. This course of conduct, as alleged in the OLR complaint and which the referee found to have been proven by clear and convincing evidence, led to the following counts of misconduct against Kasprowicz:

- Count 11. By failing to provide opposing counsel with proposed final paperwork until three months after the final divorce hearing, and by failing to file the paperwork until five months after the final divorce hearing, in violation of Wis. Stat. § 767.37(1), Kasprowicz failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

- Count 12. By failing to timely respond to OLR staff's investigative letters regarding N.G.'s grievance, Kasprowicz failed to provide relevant information during the course of an investigation, in violation of SCR 22.03(6), constituting misconduct, pursuant to SCR 20:8.4(f).

## COUNTS 13 AND 14—CLIENT R.S.

■

¶ 41. In early 1999 R.S. retained Kasprowicz to represent her in a divorce action. R.S. was granted a divorce on February 15, 2000, but a Qualified Domestic Relation Order (QDRO) was necessary to divide R.S.'s ex-husband's retirement account. After the final hearing, Kasprowicz told R.S. that it would be necessary to hire a third party to prepare the QDRO. R.S. thought Kasprowicz would hire someone to prepare it, but Kasprowicz did nothing and failed to advise R.S. that he was not arranging for someone to prepare the QDRO.

¶ 42. Subsequently, when R.S. attempted to contact Kasprowicz about the QDRO, Kasprowicz failed to respond to her calls. Later, R.S. hired other counsel to prepare the QDRO which was then submitted to the trial court and signed by the court in March of 2003.

¶ 43. After R.S. filed a grievance against Kasprowicz, the OLR sent Kasprowicz a request on October 2, 2002, that he submit a full and complete response to the grievance; Kasprowicz did not reply.

¶ 44. On October 30, 2002, the OLR sent another request to Kasprowicz, this one by certified mail. Although Kasprowicz signed for that letter, he did not respond.

¶ 45. Then, on December 9, 2002, Kasprowicz was personally served with the OLR's request that he respond to the grievance; he finally did so submitting a written response to the OLR on December 23, 2002.

¶ 46. This course of conduct, as alleged in the OLR's complaint and which the referee found to have been proven by clear and convincing evidence, led to the following two counts of misconduct against Kasprowicz:

- Count 13. By failing to follow up on the status of the QDRO, and by failing to ensure the completion of the · division of the marital estate, Kasprowicz failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

- Count 14. By failing to timely fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct, Kasprowicz failed to timely fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct, in violation of SCR 20:03(2), constituting misconduct, pursuant to SCR 20:8.4(f).

## COUNTS 15 AND 16—CLIENT D.H-V

■■

¶ 47.   In May 2001 D.H-V. retained Kasprowicz to represent her in a child support matter. After Kasprowicz filed a post-divorce petition on her behalf, the circuit court issued an order to show cause and scheduled a hearing for July 13, 2001. That hearing, however, had to be postponed to November 27, 2001, because of a failure to obtain an affidavit of service with respect to D.H-V.'s ex-husband.

¶ 48.   At that rescheduled November 27, 2001, hearing, D.H-V. appeared with Kasprowicz; D.H-V.'s husband, however, did not appear. The circuit court entered a default judgment in favor of D.H-V. ordering an increase in the amount of child support D.H-V. would receive; those increased payments were to be retroactive to July 13, 2001. Kasprowicz was directed to determine the arrearages owed by D.H-V.'s former husband and to incorporate that amount into the court order Kasprowicz was to draft. Kasprowicz did not speak with D.H-V. after the November 27, 2001, hearing.

¶ 49. Sometime after that hearing, however, Kasprowicz received a proposed stipulation from the attorney representing D.H-V.'s former husband. The terms of that stipulation differed from the circuit court's November 27, 2001, order that Kasprowicz was to draft. The proposed stipulation provided for an increase in child support but made it effective November 29, 2001, instead of retroactively to July 13, 2001.

¶ 50. In addition, a wage assignment for the monthly child support had become effective on January 31, 2002, but the stipulation proposed by D.H-V.'s former husband calculating the arrearages for December 2001 and January 2002 provided that "all other arrearages, and interest accruing therefrom, are hereby waived . . . ."

¶ 51. The proposed stipulation also provided that her former husband, rather than D.H-V., would be entitled to claim their son as an exemption on tax returns for 2002 and all successive years.

¶ 52. Kasprowicz did not send a copy of the proposed stipulation to D.H-V.; instead, he called her and left a voicemail describing the terms of the stipulation and stating that if she did not respond, he would sign it. Kasprowicz never received a response from D.H-V. D.H-V. claimed she never received the voicemail. In any event, Kasprowicz signed the stipulation on behalf of D.H-V. D.H-V. first learned of the stipulation and the subsequent order signed by the court in January 2003 when her former husband called and told her that he, not she, was entitled to claim their son as a tax exemption pursuant to the stipulation.

¶ 53. After D.H-V. filed a grievance with the OLR, OLR staff sent Kasprowicz letters on June 6, June 26, and July 18, 2003, requesting information and copies of all correspondence in D.H-V.'s files; Kasprowicz did not

provide the requested information. On August 6, 2003, in a telephone conference with OLR staff, Kasprowicz explained he had not submitted the copies of the correspondence in D.H-V.'s file because there were none. Kasprowicz informed the OLR of this lack of documentation more than two months after the OLR had requested the information.

¶ 54.   This course of conduct, as alleged in the OLR complaint and which the referee found to have had been proven by clear and convincing evidence, led to the following two counts of misconduct against Kasprowicz:

- Count 15. By signing a stipulation without consulting with D.H-V. about its terms and explaining to her how it was different from the previous court order, Kasprowicz failed to abide by a client's decision concerning the objectives of representation and failed to consult with the client as to the means by which they are to be pursued, in violation of SCR 20:1.2(a).[13]

- Count 16. By failing to notify D.H-V. of the stipulation and resultant court order, and by failing to send her copies of those documents, Kasprowicz failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

---

[13] SCR 20:1.2(a) provides:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

115

¶ 55. After listing her findings of fact and conclusions of law, Referee Peterson discussed the sanction she would recommend for Kasprowicz' misconduct. Balancing the mitigating and aggravating factors, the referee concluded that a public reprimand was the appropriate sanction in this situation. She explained that in the first place, the misconduct, while serious, was not malicious or intentionally deceptive; moreover, at least two of the counts were based on Kasprowicz' apparent misunderstanding of the law. Although the misconduct, occurring over approximately a two-year period, involved at least five clients (and one count of failing to cooperate in the investigation of a grievance filed by a sixth client), the referee concluded that Kasprowicz' primary problem was in failing to act and then avoiding his clients when questioned about that failure.

¶ 56. Disclaiming any attempt to minimize Kasprowicz' failures, the referee additionally pointed out that his conduct was not intended to—and did not—provide him with any monetary gain or benefit. According to the referee, Kasprowicz' avoidance behavior was not the result of any attempt on his part to harm his clients; rather, his behavior was a result of the medical and emotional problems he was experiencing during the two-year period.

¶ 57. Moreover, the referee noted that the harm caused by Kasprowicz' misconduct was generally minor in nature; the only monetary damage suffered involved K.M. when interest and penalties were imposed due to Kasprowicz' failure to file the fiduciary income tax return for the estate and the trust involved in that matter. In any event, the referee further observed that all monetary damages resulting from Kasprowicz' con-

duct had been voluntarily repaid by him, including his payment of successor counsel fees in the K.M. matter.

¶ 58. Because the referee found that Kasprowicz was sincerely remorseful and obviously embarrassed about the situation, the referee determined that a public reprimand would be an appropriate sanction to remind Kasprowicz of the seriousness of his conduct.

¶ 59. Although the OLR had argued that Kasprowicz' misconduct was intentional, the referee pointed to the analysis of the psychologist who had been hired to evaluate Kasprowicz' ability to practice law and based on that analysis, the referee determined that Kasprowicz had not acted intentionally in a way that was meant to harm his clients; he had not deceived or lied to them, nor had he taken money that was not his. The referee characterized Kasprowicz' conduct as a "failure to act." She said that while that failure to act was frustrating, it did not result in significant harm to his clients.

¶ 60. Furthermore, the referee concluded that there were significant mitigating factors, specifically Kasprowicz' medical condition during the time period in question. The referee wrote:

> . . . the testimony indicates that around the year 2000, respondent's health began deteriorating. He gained weight, became lethargic, tired, and was unable to concentrate or focus on work. Respondent himself testified that he had trouble sleeping and concentrating. When he realized that he was having difficulties with the OLR, and several clients, rather than address the situation, [he] avoided the problems, failing to respond to either his clients or the OLR until the last possible moment. Respondent indicated he felt somewhat hopeless, and due to his illness, felt unable to address the problems.

After seeing several doctors and undergoing numerous tests, respondent was finally diagnosed with hyperinsulinism, with a degree of depression as well. As both respondent and his wife testified, as part of his treatment, respondent started a new eating regimen designed to improve his condition. After a few months, respondent's health improved. His energy returned, he became more focused, lost his weight, and, as friends and family indicated, was back to his "old self." He has not had any problems with clients, the OLR or family since his diagnosis and treatment. Respondent appears to have cooperated in these proceedings; he presented himself well throughout the course of this proceeding.

I find the unanimous testimony of respondent, his wife, and close friend, demonstrates that respondent's conduct in avoiding his clients, avoiding the inquiries of the office of lawyer regulation and failing to act in various respects, are a direct result of his illness. In other words, had respondent been healthy, I do not believe he would have acted the way he did in these matters, and this belief is bolstered by the fact that he has not had problems since his treatment began.

¶ 61.   After review, we conclude, consistent with prior similar cases such as *In re Disciplinary Proceedings Against Theobald,* 2004 WI 59, 271 Wis. 2d 690, 679 N.W.2d 804, that a public reprimand is an appropriate sanction for Kasprowicz' misconduct as established in this disciplinary proceeding. We agree with the referee's analysis and observations. We find that the seriousness of Attorney Kasprowicz' misconduct warrants this public reprimand and we direct that Attorney Kasprowicz pay the costs of this disciplinary proceeding now totaling $5760.16.

¶ 62.   IT IS ORDERED that Paul M. Kasprowicz is publicly reprimanded for professional misconduct.

¶ 63. IT IS FURTHER ORDERED that within 60 days of the date of this order Paul M. Kasprowicz pay to the Office of Lawyer Regulation all the costs of this proceeding provided that if such costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Paul M. Kasprowicz to practice law in Wisconsin shall be suspended until further order of this court.